UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| B. E. & K. CONSTRUCTION COMPANY, | ) ) ) |
| Plaintiff/ Counter-Defendant, | ) ) ) ) |
| v. | ) ) Case No. 4:16 CV 1124 RWS |
| INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT NO. 9, | ) ) ) ) ) ) |
| Defendant/ Counter-Plaintiff. | ) ) ) |

# **MEMORANDUM AND ORDER**

Employer B. E. & K. Construction Company ("Employer") and Union International Association of Machinists and Aerospace Workers District No. 9 (the "Union") are parties to a collective bargaining agreement ("CBA"). Employer and the Union agreed to arbitrate a dispute concerning termination of Employer's employee, Curtis Goewey ("Goewey"). Employer filed the present lawsuit seeking to overturn the arbitration award. Employer asserts that the arbitrator exceeded his authority under the CBA. The parties submitted cross-motions for summary judgment. Based upon a review of the record before the court, I will uphold the arbitration award and enter summary judgment in the Union's favor. However, I

will deny the Union's accompanying motion for attorneys' fees and costs.

I. *Background*

The facts in this matter are undisputed. Employer and the Union are parties to the CBA, which is effective from August 30, 2014 until August 29, 2017. Employer employed Goewey from October 4, 2008 until February 23, 2015, when Employer terminated him for alleged acts of dishonesty and insubordination. Goewey's employment was subject to the terms of the CBA and he was represented by the Union. The CBA includes the following relevant provisions regarding termination and arbitration:

> *Section 7.1*. No employee shall be suspended or discharged without cause and all dismissals will be subject to the Grievance Procedures and Arbitration clause set forth in this Agreement.
>
> *Section 7.2*. The following are representative of the type of serious misconduct which may result in immediate termination regardless of the number of prior reprimands: theft, dishonesty; violation of the drug/alcohol policy; refusal to follow lawful instructions; failure to perform work as directed after written counseling and an opportunity to improve; violation of contract provisions, BASF rules, government regulation, or applicable Federal and/or State Laws; serious insubordination, security or safety violations or other serious misconduct…For infractions not involving serious misconduct, progressive discipline will ordinarily be applied in the following steps: 1) verbal; 2) written reprimand; 3) unpaid suspension for up to 10 days; 4) termination. Offenses are cumulative and any violation will result in the next step of discipline (unless serious misconduct occurs, which will result in termination).
>
> *Section 9.2*. The decision of the arbitrator shall be final and binding.

> The arbitrator's authority shall be limited to the express terms of this Agreement and he shall have no authority to modify or alter this Agreement. The arbitrator shall have no authority to modify the discipline imposed unless it was demonstrated that the Company failed to follow the progressive discipline procedure or did not have cause under this Agreement to impose either a suspension or termination.

At the time of the incident at issue, Goewey was employed as an electrician and instrumentation tech at a plant managed by Employer's client, BASF Corporation, in Palmyra, Missouri. Goewey worked the day shift, from 6:30 a.m. to 2:30 p.m. Because Goewey worked with chemicals, he typically had time to shower prior to the 2:30 p.m. scheduled end of his workday. In some instances, an employee could obtain a "holdover," in which he would clock out later than the end of his scheduled shift and receive overtime pay for the additional time. For example, an employee like Goewey who was assigned to work with toxic chemicals but did not have time to shower before his shift's scheduled end time might be granted a holdover.

On February 10, 2015, Goewey attended a training session, which was scheduled to end at 2:00 p.m. The session ended late, sometime around 2:15 p.m., so Goewey asked a foreman who was present, Tom Waite ("Waite"), whether there would be a holdover. Waite told Goewey that he should clock out at 2:30 p.m. After leaving the training session, rather than obeying Waite's instruction, Goewey

proceeded to seek out a different answer from other supervisors. First, Goewey tried to contact his direct supervising foreman, Eric Hack ("Hack"), by radio, to request a holdover, but Hack was unavailable. Next, Goewey requested a holdover from another foreman, Nathan Quick ("Quick"), who was nearby, but Quick told Goewey that he did not have authority to approve of a holdover. Finally, Goewey telephoned supervisor Greg Harris ("Harris"), to whom the foremen report, to repeat the holdover request, although Goewey did not mention his prior communications with Waite or Quick. Harris agreed to grant the holdover, so Goewey clocked out late and received a half-hour of overtime pay. Employer terminated Goewey on two grounds related to this incident: 1) insubordination, for not abiding by Waite's initial directive to clock out at 2:30 p.m.; and 2) dishonesty, for seeking out other supervisors after receiving Waite's order and not mentioning Waite's order to those supervisors.[1]

Following Goewey's termination, the Union filed a grievance. The parties were unable to come to an initial resolution, so they agreed to arbitrate the matter pursuant to the terms of the CBA. Employer and the Union mutually selected Thomas L. Yaeger (the "Arbitrator") to serve as arbitrator. The parties agreed that

---

[1] The arbitration also addressed another incident which occurred on February 6, 2015. Employer argued that either incident provided cause for Goewey's termination. The Arbitrator held that Employer did not have cause to discipline Goewey in connection with the February 6, 2015 incident. Employer has not asked the court to vacate the Award with respect to that finding, so I have not addressed it.

the Arbitrator would decide on the following issue: "Was Mr. Goewey terminated for cause as required by the contract? If not, what is the appropriate remedy?" On June 8, 2016, following two hearings and the parties' submission of briefs, the Arbitrator issued his arbitration award (the "Award"). The Award concluded that Goewey's actions in obtaining the holdover constituted "serious misconduct" as defined by the CBA; however, Employer did not have sufficient cause to discharge Goewey under the CBA. Citing relevant provisions of the CBA, including Sections 7.1, 7.2, and 9.2, the Arbitrator agreed that Goewey should be disciplined for serious misconduct, specifically for his dishonesty and refusal to follow instructions. The Arbitrator reasoned, however, that the circumstances did not necessitate or warrant termination, since Section 7.2 of the CBA permissively provides that serious misconduct "*may* result in immediate termination" [emphasis added]. The Arbitrator cited, but did not discuss extensively, the additional language of Section 7.2 of the CBA, which provides that progressive disciplinary procedures apply "(unless serious misconduct occurs, which *will* result in termination)" [emphasis added]. The Arbitrator also considered additional factors related to whether Employer generally had cause to terminate Goewey. In particular, the Award discussed Goewey's lack of a prior disciplinary record and the Employer's relevant disciplinary practice, which did not include any pattern of

5

discipline in similar cases.  Ultimately, the Arbitrator determined that Goewey's misconduct was not so egregious as to provide cause for immediate discharge.  The Award ordered Employer to reinstate Goewey, convert the termination to a five-day disciplinary suspension, and make him whole for related losses.

Employer requested reconsideration of the Award by the Arbitrator, which the Arbitrator denied.  Employer filed this lawsuit asking the court to vacate the Award under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, arguing that the Arbitrator exceeded his authority by impermissibly ignoring and modifying the plain language and essence of the CBA.  The Union filed a counterclaim seeking enforcement of the Award and payment of its attorneys' fees and costs.  Both parties have moved for summary judgment as a matter of law.

## II. *Legal Standard*

### a. *Summary Judgment*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those

portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

  *b. Arbitration*

  For actions arising under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "we review an arbitrator's award to determine whether: (1) the parties agreed to arbitrate; and (2) the arbitrator had the power to make the award." PSC Custom, LP v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Local No, 11-770, 763 F.3d 1005, 1008 (8th Cir. 2014) (quoting Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431, 102 F.3d. 1464, 1467 (8th Cir. 1996)). Here, there is no dispute as to whether the parties agreed to arbitrate, so the sole issue is whether the Arbitrator had the power to make the Award.

I must review the Award narrowly. "Judicial review of an arbitrator's decision is extremely limited," and the arbitrator's award must be accorded "an extraordinary level of deference." PSC Custom, 763 F.3d at 1008 (quoting Boise Cascade Corp. v. Paper Allied–Indus., Chem. & Energy Workers, 309 F.3d 1075, 1080 (8th Cir. 2002)). "We give substantial deference to labor arbitration awards because federal policy favors the resolution of private labor disputes by arbitration to which the parties agreed." Boehringer Ingelheim Vetmedica, Inc. v. United Food & Commercial Workers, 739 F.3d 1136, 1139 (8th Cir. 2014). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id. at 1140 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). Nevertheless, the Award is not altogether free from review. An arbitrator "does not sit to dispense his own brand of industrial justice," and an arbitration award will be deemed "legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers v. Enter. Wheel & Car Corp., 363

U.S. 593 (1960). "The arbitrator may not ignore the plain language of the contract" or "modify unambiguous contract provisions." Boehringer, 739 F.3d at 1140.

   III.   *Discussion*

      a.   *Waiver of Mandatory Termination Argument*

The Arbitrator found that Goewey committed serious misconduct by acting dishonestly and failing to follow instructions, but concluded that Employer did not have cause to terminate Goewey under the CBA. Employer now asserts, for the first time, that the Award should be vacated because the Arbitrator did not find that "serious misconduct" necessitated immediate termination. Employer did not raise this argument during arbitration. By not presenting this position during arbitration, Employer waived its ability to argue that the Arbitrator's ultimate factor-based interpretation and application of the CBA exceeded his authority. "In general, federal courts do not permit a party to withhold an issue or argument during arbitration and then, upon losing, raise it to the reviewing court." Boehringer, 739 F.3d at 1140. "[O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." PSC Custom, 763 F.3d at 1010 (quoting John Morrell & Co. v. Local Union 304A of

9

the United Food & Commercial Workers, 913 F.2d 544, 561 (8th Cir. 1990)).

Here, the parties stipulated that the Arbitrator would decide on the following statement of issue: "Was Mr. Goewey terminated for cause as required by the contract? If not, what is the appropriate remedy?" Employer expressly agreed to this "for cause" analysis. Moreover, it does not appear that Employer clearly presented any argument to the Arbitrator in favor of mandatory termination, but instead made factor-based arguments in accordance with the stipulated issue of whether cause for termination existed. For example, Employer's post-hearing brief for the Arbitrator failed to quote or discuss the allegedly mandatory "will result" language from Section 7.2 of the CBA. Employer's brief also argued that "the penalty for dishonesty and/or serious insubordination, according to the parties' Agreement can be termination of employment," suggesting that the CBA permitted, but did not require, termination under the circumstances. By stipulating to the issue for decision and failing to present argument in favor of mandatory termination to the Arbitrator, Employer waived the opportunity to challenge the Arbitrator's focus upon the agreed-upon issue and scope. "Having requested that the arbitrator determine whether [Goewey] was terminated for just cause, [Employer] cannot now be heard to complain that the arbitrator performed that very analysis." Bureau of Engraving v. Graphic Commc'n Int'l Union, Local 1B,

284 F.3d 821, 825 (8th Cir. 2002).

  b. *Arbitrator's Interpretative Authority*

Even if Employer did not waive its ability to challenge the Arbitrator's analysis, I must accord extreme deference to the Award. Employer argues that the Arbitrator ignored and effectively modified plain language of the CBA, which mandates discharge in cases of serious misconduct. The Award should be upheld, however, because Arbitrator acted within the scope of his authority in interpreting and applying the terms and essence of the CBA. "[T]he parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." Alcan Packaging Co. v. Graphic Commc'n Conference, Int'l Bhd. of Teamsters & Local Union No. 77–P, 729 F.3d 839 (8th Cir. 2013) (quoting Misco, 484 U.S. at 38). "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not reason for refusing to enforce the award." PSC Custom, 763 F.3d at 1008 (quoting United Steelworkers, 363 U.S. at 598).

Regardless of whether the Arbitrator made a mistake in interpreting the CBA or whether I disagree with the result, the Award will stand if the CBA was susceptible to construction. "We cannot interfere with the arbitrator's award

11

'unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation.'" PSC Custom, 763 F.3d at 1008 (quoting Kewanee Mach. Div. v. Local Union No. 21, Int'l Bhd. of Teamsters, 593 F.2d 314, 318 (8th Cir.1979)). Here, the CBA presents at least two potential interrelated ambiguities which were subject to the Arbitrator's reasonable interpretation: (a) whether termination for serious misconduct is mandatory or permissive, and (b) whether CBA provisions concerning general cause for termination should be considered alongside the specific language of Section 7.2 of the CBA. The Award specifically cites the relevant language of Sections 7.1 and 7.2 of the CBA, demonstrating that the Arbitrator did not ignore or attempt to modify any plain language of the CBA. Although the Award focuses upon the permissive "may" provision found in Section 7.2 of the CBA ("[t]he following are representative of the type of serious misconduct which may result in immediate termination"), the Award also cites the arguably mandatory "will result" language found in Section 7.2 of the CBA (progressive disciplinary procedures apply "(unless serious misconduct occurs, which will result in termination)"), suggesting that the Arbitrator was aware of and considered both provisions in constructing the CBA. As a result, the Arbitrator modified the penalty rather than the terms of the CBA, consistent with his authority.

The Arbitrator appears to have broadly analyzed the terms and essence of the CBA in making a factor-based for cause determination. "It was for the arbitrator to harmonize any discordant provisions within the contract relating to the discretionary authority granted management and the just-cause requirements limiting that authority." Trailmobile Trailer, LLC v. Int'l Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO, 223 F.3d 744, 747 (8th Cir. 2000). As previously noted, Section 7.2 of the CBA provides examples of serious misconduct and a progressive discipline procedure. This specific language may be read in connection with the general for cause standards of the CBA, including: (i) Section 7.1, which states that "[n]o employee shall be suspended or discharged without cause," and (ii) Section 9.2, which grants the Arbitrator the authority to modify disciplinary penalties if the Arbitrator finds that the Employer did not have cause to impose a termination. The Award provides adequate reasoning for the Arbitrator's conclusion that Employer did not establish sufficient cause for termination under the terms and essence of the CBA.

The Eighth Circuit has accorded extreme deference to arbitrator's awards in similar cases concerning termination of employees. *See, e.g.,* PSC Custom, 763 F.3d 1005 (court reinstated arbitrator's decision to modify penalty where termination was mandated by collective bargaining agreement, but parties

stipulated to just cause analysis and arbitrator determined that just cause for termination did not exist); Boehringer, 739 F.3d 1136 (employer was precluded from challenging arbitrator's silence on alleged unambiguous discharge mandate since employer had not presented argument on provision at issue; collective bargaining agreement did not included unambiguous exception to the just cause analysis); Bureau of Engraving, 284 F.3d 821 (arbitrator had authority to depart from specific contract language suggesting termination for absenteeism was mandatory in light of general for cause language of agreement and parties' for cause framing of the issue); Trailmobile, 223 F.3d 744 (arbitrator had authority to reconcile contract provisions, including a general for cause provision, where non-mandatory rule stated that employee "may" be discharged for actions at issue); Local 238 Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers v. Cargill Inc., 66 F.3d 988 (8th Cir. 1995) (upholding arbitrator's determination that there was not sufficient just cause for discharge based upon interpretation of discordant policy provisions). Overall, these cases suggest that the Award should be upheld.

Employer has not demonstrated that the Arbitrator exceeded his authority in making the Award. As a result, I must defer to the Arbitrator's reasoned interpretation of the terms and essence of the CBA by upholding the Award.

c. *Attorneys' Fees*

The Union has also requested an award of its attorneys' fees and costs for this matter. Section 301 of the Labor-Management Relations Act of 1947 does not provide a statutory basis for the recovery of attorneys' fees, but the Eighth Circuit will authorize an award of attorneys' fees for an action brought under Section 301 if the losing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." American Fed'n of Musicians, Local 2–197, AFL-CIO, v. The St. Louis Symphony Soc'y, 203 F.3d 1079, 1082 (8th Cir. 2000). A court may factually determine that bad faith exists where a party's claim is totally without merit, "frivolous, unreasonable, or groundless, or [where the party] continued to litigate after it clearly became so." Actors' Equity Ass'n v. Am. Dinner Theatre Inst., 802 F.2d 1038, 1042 (8th Cir.1986) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421–22 (1978)). In this case, Employer presented argument based upon legal and factual reasoning and the Union has not demonstrated requisite bad faith on the part of Employer. As such, I will deny the Union's motion for attorneys' fees and costs.

For the foregoing reasons, and based upon the record before the Court, I conclude that the Award shall be upheld. Employer's Motion for Summary

Judgment shall be denied, and the Union's Motion for Summary Judgment with respect to enforcement of the Award shall be granted.  The Union's motion for attorneys' fees and costs shall be denied.

Accordingly,

**IT IS HEREBY ORDERED that** Employer's Motion for Summary Judgment [19] is **DENIED**.

**IT IS FURTHER ORDERED that** the Union's Motion for Summary Judgment [20] is **GRANTED** in part and **DENIED** in part, Employer's Complaint is **DISMISSED** with prejudice and the Award is **CONFIRMED** in its entirety.

                                                    _____
                                                    RODNEY W. SIPPEL
                                                    UNITED STATES DISTRICT JUDGE

Dated this 2nd day of December, 2016.